My name is Ron Skocipic, and I represent the Plaintiff and Appellant Liberty Mutual Insurance Company, and I'd like to reserve two minutes to rebut. I think we need to look at why this case is here in this court, and the reason that we're here is because of the trial court's confusion regarding how Blatt – excuse me – how Buss v. Superior Court applies to a reimbursement claim. The Buss court, in the beginning of its opinion, analyzed the fact that there were multiple causes of action in the complaint against Jerry Buss. The trial court – and their opinion is cited in the Buss opinion – talked about the fact that if there were claims that were not covered, that the insurance company would have a right to seek reimbursement for the defense costs paid exclusively for the defense of those claims. Unfortunately, the trial court confused the issue by blending the term claim, and perhaps thinking of the term in the federal sense, with cause of action. The court then determined that because there were certain causes of action that pled some forms of potentially covered property damage, the insurance company could never get any of its money back. That ruling by the court is, we believe, clearly erroneous, clearly flies in the face of the Buss opinion by the California Supreme Court. We cited one example in our opening brief regarding how it's typical for plaintiffs to plead one cause of action and then keep incorporating to the end of the complaint. Under the court's theory of when you're entitled to reimbursement, if you pled property damage in the first cause of action and kept incorporating to all the other causes of action, you'd never have an entitlement to reimbursement. In thinking about this case for oral argument, I came upon an example. I think it's an even better example because it happens every day in construction defect cases, and that is when there is an exclusion in a policy for subsidence or other earth movement. This happens all the time. We have a situation where there are minor damages alleged that are property damage, say from plumbing that damaged six square feet of floor. And, oh, by the way, the whole house is sinking and it's cracked and the framing is messed up and the foundation is messed up, and we wind up with a situation where we have damages or, excuse me, a defense of the subsidence claims that are maybe $800,000, $900,000 because of the civil engineers, the geotechnical experts that are involved, and we have a minor amount that's paid for the other what we would refer to as traditional construction defect claims. Under the court's ruling, the insurance company would not be able to get any of the money back it paid to defend the subsidence claims. But you need to be able to segregate out the claims that are potentially covered from those that are not, and that's my problem with this case. I'm not sure that they were either separable or that they were separated. Well, in our opinion, they were separable, and we did have, of course, the stipulation that was entered sometime between the court's initial ruling and the time the judgment was entered, but we were prepared to go to trial and prove with respect to, and we're talking now just, I think, about the defense costs for Mr. Blatt, the amount of money that was paid to defense counsel for Mr. Blatt. We were prepared to put that evidence on at the time of trial, but for the fact that the court said, oh, you move for summary judgment, we don't think you're entitled to summary judgment, and by the way, we're going to grant summary judgment on a limited amount of damages based upon an entirely different interpretation of BUS that's inconsistent with BUS. And I'm thinking by your comment that the court understands, obviously, that the purpose of BUS and the rationale behind the opinion was, here we have particular items of damages for which there are no coverage and for which no premium whatsoever was paid. No insured anticipated expected to get coverage for those damages, and that's what we have here because we ultimately know that at the end of the case, Liberty Mutual's named insurer, Chernobyl Foundation, was found to have zero liability in the case. So that's the first part of the issue. The first part of the issue are the fees that were paid to Mr. Blatt's attorney to defend him. The second part of the issue is the so-called Pritchard issue involving supplementary payments for attorney's fees that were awarded to the underlying plaintiffs. It appears, I guess at first blush, that we may have an inconsistency in the opinions now of the California Courts of Appeal because of Pritchard and the succeeding case earlier this year, in June of this year, the Mansari case. Unfortunately, I litigated the Pritchard case and not the Mansari case. So I didn't have the right panel on my side. But the point is, I think the important point is, it really doesn't make any difference in this case because with respect to those supplementary payments, we know that in either case, those supplementary payments, those fees, did not arise out of Schnabel's work. It had nothing to do with Schnabel. It had to do with a contract that was entered years after Schnabel was off the site, had completed its work, and we know, because of the jury verdict, that the jury said, hey, Schnabel had nothing to do with any of this. These damages all arose out of that contract. So what we have is the Pritchard case, which basically says, hey, if you defended and there are attorney's fees awarded, you have to pay them the supplementary payments. But since they're defense fees, you can get them back in a reimbursement claim. Mansari says you never really had to pay those in the first place because there was no underlying damage that was covered. So you're safe by not paying them, but because you paid them and you reserved, you can still get the money back. So either way, I mean, they may be inconsistent to the extent of what the insurance company has to do when the award comes in for the attorney's fees that are awarded as cost, but it's not inconsistent in the terms of the facts of our case as to whether the insurance company can get the money back. And in our opinion, in this case, Liberty Mutual gets all of that money back. So we have a situation where we're looking at the fees paid to defend Mr. Blatt under the tender and under the agreement by Liberty Mutual to defend him under a full reservation of rights, including a specific reservation to get the money back. And you can probably gather from the record Liberty Mutual was the only company that was defending Mr. Blatt. I mean, he had no insurance on his own as a developer, so it was Liberty defending him. So we have that issue, and that issue is something that we have the facts. Had we been given the opportunity to go to trial and present the facts, this item is exclusively for work other than Schnabel's work. This item is a combination. This item is for Schnabel's work. And we would have been able to parse that out at the time of trial. And on the Mansari-Pritchard issue, our opinion is, our position is that we get all that money back. Okay. Why don't we hear from the other side, and you've saved a little time. Okay. Thank you. Good morning, Your Honor. I am Ronald Foreman. I'm the other Ron, and this morning I'll make myself the right Ron. Counsel starts out by discussing the issue of the separateness of the causes of action and talks about the way that the district court got it wrong, except that if you go to page 8 of the motion for summary judgment found in the excerpts, which is found at page 11 of the excerpts, Justice or Judge Conte wrote, thus the court finds as a matter of law that the buyer's cause of action for breach of contract constituted a claim for physical injury to tangible property and therefore was a claim for property damage. The issue being that it's not a cause of action that controls, and as pointed out in our letter brief in the Vandenberg case, it is the claim that controls, and it doesn't matter how the claim is stated, because if it did, then under Vandenberg, the logic would be that the plaintiff, the injured party, could control what the insurance company does, and that's not what the law is. What the law is, is that's the policy language that controls, and since the language in Vandenberg is that it is the potential for legally obligated to pay damages, then that is what is controlling, meaning this. The breach of contract claim was a claim for a remedy. The negligence claim was a claim for remedy. It doesn't matter what the cause of action is under Vandenberg. It's a claim. And the district court found that there were claims, and these claims were mixed claims brought together as property damage claims, and therefore the court found that there was an obligation on the part of Liberty to pay for the cost of defense and to pay for the attorney's fees. And what we really come down to in part is one sentence, which is found in the excerpts at page 347, which is Liberty agrees to pay for all costs taxed against the insured in the suit, all costs. And we now have this most recent decision that Mr. Skocipic raises with the court, which is the State Farm case. Interestingly, a month later, the Griffith Dewatering Corporation was issued in July of 2009. That case by Justice Sills never mentions the distinction that counsel would like to have the court adhere to now, meaning that Pritchard was decided correctly on our behalf. Now, there's another issue that comes up in this case, and that is something that one of the justices participated in, which is this issue about the stipulation. In the decision of Justice Kosinski in the Lowry v. Barnhart decision pointed out in our letter, those facts never saw the courtroom's light of day, meaning that all of the facts that were necessary for Judge Conte and the district court to make a decision on the motion for summary judgment were presented. Liberty Mutual did not make an effort to parse it out. Liberty Mutual did not meet its burden of proof in parsing out the issue of, oh, these are the fees. What happened, of course, was three months later, the stipulation was entered into. But if Justice Kosinski's decision means anything, this Court, as a reviewing court, reviews the facts that were available to Justice Conte, Judge Conte at the time, not something that happened three months later. And I think that those being presented to this Court, and I mean this respectfully, we are entitled to the same remedy that the Grieve Party was entitled to under Lowry, which is that we should, in this case, should be sent off to the appellate commissioner to make a determination if this Court were to rely upon any of those facts set forth in the stipulation, that they're not properly before this Court. Yes, sir. I'd like to ask you about something that I don't think the other side has argued on appeal anyway, and that is the exclusion of water damage from the work that the flat is doing for Schnabel. Yes, sir. So is it Schnabel or Schnebel? Schnabel, I believe. Schnabel, yes. All right. So Schnabel's operation doesn't include these exclusions. So Schnabel can't be liable for them. I want to make sure I answer the Court's question. Are you asking me why is Schnabel liable for some of them? No, no. Schnabel is not liable because it's been excluded. Which exclusion? I'm sorry, Your Honor. I want to make sure I'm getting this correct. Because I'm looking at the contract between Flat and Schnabel. It's on ER 139. It's a very small print. I've had to have it enlarged to be able to read it. And if you can read it, this is probably on the second page. It refers to the standard exclusions. And then it goes on. Exclusion B and D look like. I want to make certain. Are you looking at page 139 of the excerpt, Your Honor? Well, 140. It goes on. Yes, sir. And even enlarged. Do you see the verses A, B, C, and D? On page 140, I have numbers 1, 2, and 30, Your Honor. Yeah. Well, keep going. See if you can find A, B, C, and D. They're a subsection. Is this page 2 of 4 of the contract, Your Honor? No. 139, 140. Yes, sir. May I approach, Your Honor? I want to make sure I'm holding the. Is this page may I approach? I can't see it. May I approach, Your Honor? Maybe I can show you this. Yes, sir. And this was released last. Yes, sir. Okay. So that those things seem not to be Schnabel operations. Those things that are excluded is not what the. Yes, sir. What it's doing. I don't know that the proposal between Schnabel and Blatt controls, I believe it's the language of the Liberty Mutual insurance policy that's controlling here. Liberty Mutual has insured Schnabel, and Blatt gets written into, I think, to the extent Schnabel was in. And if Schnabel is not taking any responsibility for this, Schnabel's got no liability, and Liberty Mutual has no liability. I understand what the Court is saying, but I think the Court has it wrong in the following fashion. The claim was for negligence or the claim was for property damage. Under the law, Schnabel was exonerated here on a question of facts by the jury. Right. But the facts is not only the general thing. It's water damage, is it not? Water damage. That's correct, Your Honor. And this contract appears to say Blatt's not doing our work when he's dealing with water, to put it broadly. I'm hearing the Court, and I tried the case, Your Honor, so I want to make sure I understand what the Court is saying so I can answer it, and I don't think I'm getting the question, and I apologize for being thick. You see the contract. Yes, sir. You see that certain work is excluded. That's correct. What Blatt is going to do. That's correct. So it's not a Schnabel operation anymore. That's to the extent that they supervise or that they were involved. No, but they're not responsible. They say they won't be. Yes, Your Honor. So they have no responsibility, and therefore their insurer has no responsibility. Well, to the extent that their work damaged the property of others, they are responsible, and that's the issue in the case. Water damage did damage the property of others. Well, we can – I don't think you're getting my point, but I don't know what I'm getting. I may not be getting your point, and I do apologize, Your Honor. I want to try to address the Court's point because I'm not ducking the issue at all. Can we try it one more time? No. I'm sorry. All right. Maybe what I should just do is conclude that and then rest on the briefs that we've submitted before I dig a deeper hole for myself and where I've got some water damage, Your Honor. Suffice to say, Your Honor, it is our position that the district court got it correct in the motion and that the amounts of money that were paid were properly paid. And one last thing, Your Honor, and that's in the declaration of Michael Blatt. It's not as though Michael Blatt had a free ride here. If you look at the declaration of Michael Blatt, he paid $90,000 to the aggrieved party before the lawsuit was filed. He paid the $144,000 judgment. He paid a portion of the defense cost. He paid close to $400,000. He's paid a lot more than anybody in this case. And I think that if this Court follows the Vandenberg case, follows Pritchard, and follows Buss, that Liberty Mutual is not entitled to any reimbursement. And for one final point, and that's at the end of our brief, they didn't properly reserve their right to recover those costs because their reservation rights letter doesn't cover that issue. Now, on that basis, I'll submit it. Roberts. Okay. Thank you. Thank you. Response. Well, first of all, I think it's clear that Liberty Mutual did reserve its rights on all defense costs. That was in its reservation rights letter. Case law is clear that the supplementary payments are part of the defense obligation. Just a few comments about what Mr. Foreman said. He referred to the fact that we had mixed claims. Indeed, that's what we had. There were mixed claims in this lawsuit, and that's why we're here. We're here to segregate the claims that were never covered at all because they did not arise out of the work. As Judge Noonan pointed out, there was no liability at all on the part of Schnabel. The jury so found, in effect, in the contract itself that there's exclusions for drainage. The other point, and it goes back to the first point I just made, the other point that Mr. Foreman made was that Liberty agreed to pay all costs on appeal at the end of the case. Well, that is true, but that payment was subject to the reservation of rights. That was an ongoing reservation of rights that was never withdrawn in this case. Mr. Foreman also pointed out that Liberty did not parse out the damages, but we never had an opportunity to do that. Part of our summary judgment motion was just on the liability issues on the summary adjudication. The court somehow managed to rule against us and send us home before we got to the point where we could parse out those damages at time of trial. Okay. Thank both sides for your nice arguments. Your Honor, can I reopen for one comment? Just to answer the question. Why don't you do that, but that leaves the door open for him, too. I'll take a second. I think I have the Court's point. I think the distinction is indemnity dollars versus the defense dollars. If, in fact, Staub would have done something wrong, that obligation would have been to indemnify for those problems. That's indemnity. This case deals with defense dollars, the cost of the lawyers, and the cost of the case. And I think that answers the Court's question, I hope. Thank you, Your Honor. Thank you. And under SenFed, if there's no duty to indemnify, you don't get the supplementary payments issue. Okay. Thank both sides again for their helpful arguments. Thank you. The case of Liberty Mutual v. Blatt now submitted for decision.
judges: Duffy, Noonan, Fletcher W.